IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN BICKINGS, Individually and On Behalf of All Others Similarly Situated *Plaintiffs* | : : : : : | CIVIL ACTION NO. 13-2894 |
| v. | : : | |
| NHS HUMAN SERVICES[1] and NHS-ALLEGHENY VALLEY SCHOOL, LLC *Defendants* | : : : : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                            JANUARY 27, 2014

## MEMORANDUM OPINION

**INTRODUCTION**

Kathleen Bickings (Plaintiff) filed an amended complaint against NHS-Allegheny Valley School, LLC ("NHS-Allegheny"/Defendant) under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), for failure to pay overtime compensation to its registered nurses and licensed practical nurses, and under the Pennsylvania Whistleblower Law, 43 P.S. § 1421 *et seq.* ("Whistleblower Law"), for wrongful termination of employment in retaliation for knowing and reporting an unlawful scheme undertaken by Defendant's management.[2]

---

[1] On July 10, 2013, the parties entered into a stipulation to voluntarily dismiss *only* Defendant NHS Human Services ("NHS Human Services"). Plaintiff filed an amended complaint on July 25, 2013, which again named NHS Human Services as a defendant. Thereafter, the parties entered into a second stipulation to voluntarily dismiss NHS Human Services. This stipulation was approved by this Court on July 31, 2013. [ECF 14].

[2] On May 24, 2013, Plaintiff filed a collective action complaint alleging FLSA and Whistleblower Law violations, and a wrongful discharge. On July 25, 2013, Plaintiff filed an amended collective action complaint ("amended complaint"), and excluded claims for wrongful discharge and unpaid wages under 29 U.S.C. § 206, but maintained the claims for unpaid overtime compensation under § 207 and violations of the Whistleblower Law.

On August 14, 2013, Defendant filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6), arguing that Plaintiff failed to state a claim for which relief can be granted. [ECF 15]. Plaintiff filed a response in opposition. [ECF 17]. This matter is ripe for the Court's determination.

For the reasons set forth herein, Defendant's motion to dismiss is granted, *in part*.

## BACKGROUND

When considering Defendant's *motion to dismiss* and the response in opposition, this Court accepts as true all pertinent facts alleged in the amended complaint, *to wit*:[3]

> In 1998, Plaintiff began her employment with Defendant as a registered nurse paid at an hourly wage. Am. Compl. ¶¶ 2, 35, 40.
>
> NHS Human Services is a community-based nonprofit service provider that owns and operates numerous subsidiaries, including Defendant NHS-Allegheny. These entities receive funding from Medicare and/or Medicaid in payment for patient care rendered. *Id.* ¶¶ 9, 14.
>
> As a registered nurse, Plaintiff was required to work eight-hour shifts and "on occasion" worked "in excess of 40 hours per week". *Id.* ¶¶ 41, 42. This overtime unpaid work was performed either before and/or after scheduled shifts and included, but was not limited to, patient care related duties which were an integral and indispensable part of her employment as a registered nurse. *Id.* ¶ 44.
>
> Plaintiff alleges that she was supposed to receive a 30-minute unpaid meal break, and that her compensation was automatically deducted to reflect the meal break. Plaintiff claims that she did not receive the uninterrupted 30-minute meal break during every shift worked and routinely "performed patient care related job duties during these unpaid meal breaks." *Id.* ¶ 45.
>
> The collective class consists of an undetermined number of individuals, "easily ascertain[able] by Defendant[s]", consisting of present and/or former registered or licensed practical nurses, who also worked in excess of 40 hours per week without compensation and did not receive uninterrupted 30-minute meal breaks. *Id.* ¶¶ 18, 19.

---

[3] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

2

In mid-January 2013, during a scheduled shift, Plaintiff claims she entered the office of Maureen Greene, Health Services Supervisor at Defendant NHS-Allegheny and spotted paperwork in which Ms. Greene, with the authorization of Jennifer Szapo, Administrator at NHS-Allegheny, was requesting compensation from Medicare and/or Medicaid for performance of nursing duties in certain departments that were not actually performed. *Id.* ¶¶ 48-53. Ms. Szapo and Ms. Greene subsequently determined that Plaintiff discovered their "unlawful scheme" and thereafter "began to treat Plaintiff differently." *Id.* ¶¶ 56, 57.

On January 29, 2013, approximately two weeks after the discovery of the paperwork in Ms. Greene's office, Plaintiff was notified that she was being placed on administrative leave pending an investigation for falsifying a document. *Id.* ¶ 59.

On January 30, 2013, Plaintiff reported the conduct of Ms. Green and Ms. Szapo to the Department of Public Works. *Id.* ¶ 63. By letter dated January 31, 2013, Plaintiff notified John Ciavardone, Defendant's Vice President for Integrity and Quality, of their misconduct. *Id.* ¶ 64.

On February 4, 2013, Plaintiff's employment was terminated. *Id.* ¶ 65.

**LEGAL STANDARD OF REVIEW**

Rule 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been presented. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). When deciding a Rule 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). *See also Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citations omitted). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do", *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted), nor will advancing only factual allegations that are "merely consistent" with a defendant's liability. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 557). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See Twombly,* at 570; *see also Umland v. Planco Fin. Servs., Inc.,* 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement', . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## DISCUSSION

The arguments contained in Defendant's motion to dismiss Plaintiff's two count amended complaint will be addressed separately.

### *FLSA Claims-Count I*

Pursuant to FLSA, an employer must compensate an employee at a rate of at least one and a half times the employee's regular rate for hours worked beyond the 40-hour weekly threshold. 29 U.S.C. § 207(a). The FLSA also provides for a private right of action for violations thereunder, including a lawsuit by one or more employees filed on behalf of themselves and other similarly situated employees. *Davis v. Abington Mem'l Hosp.,* 2012 U.S. Dist. LEXIS 111160 at *16-17 (Aug. 7, 2012) (citing *Knepper v. Rite Aid Corp.,* 675 F.3d 249, 253 (3d Cir. 2012)). The statute further provides that an employer who violates the overtime provision of § 207, shall be liable to the employee or employees affected in the amount of their unpaid overtime compensation. *See* 20 U.S.C. § 216(b).

4

Defendant asserts that the amended complaint fails to state a claim for unpaid overtime compensation because Plaintiff failed to specify or approximate the number of uncompensated overtime hours she and others similarly situated worked and, therefore, the allegations should be dismissed. Defendant relies on *Davis*, wherein the court dismissed the plaintiff's § 207 claim on a Rule 12(b)(6) motion due to a lack of "any specific instances where a named plaintiff worked overtime and was not paid for it". *Id.*, 2012 U.S. Dist. LEXIS 11160 at *28.

Here, the amended complaint alleges that "on occasion", Plaintiff "worked in excess of her scheduled shifts performing compensable work." Am. Compl. ¶ 41. This work is described as including, but not limited to, "patient care related job duties which were integral and indispensable to her job as a registered nurse." *Id.* ¶ 44. Plaintiff contends that the hours are not specified because Defendant "failed to accurately track, record and report all the hours worked by Plaintiff and Class Plaintiffs." *Id.* ¶ 27.

Despite Plaintiff's contentions and her alleged inability to calculate the hours worked overtime, this Court cannot "draw a reasonable inference" whether Plaintiff, or any other similarly situated individual, worked in excess of 40 hours per week. Plaintiff does not offer a reasonable estimate, outside of "on occasion" language, of the number of overtime hours worked and/or the frequency she or others were required to work overtime, much less what exactly was "integral and indispensable to her job as a registered nurse". The amended complaint further lacks information on the specific type of entity Defendant NHS-Allegheny is (a school, a hospital, etc.), short of identifying it as a human services provider, to provide context for the alleged overtime hours worked. Lastly, the amended complaint also fails to allege facts as to how hours worked by Plaintiff and others were tracked and recorded (whether by time cards or otherwise).

Notwithstanding the lack of specificity, Plaintiff argues that the amended complaint contains sufficient factual information to place Defendant on notice of the collective claims asserted, including hers, and contends that district courts have declined to dismiss similarly pled complaints. In support of this argument, Plaintiff cites to *Asirifi v. West Hudson Sub-Acute Care Ctr., LLC*, 2013 U.S. Dist. LEXIS 16419 (D. N.J. Jan. 30, 2013); and *Rummel v. Highmark, Inc.*, 2013 WL 6055082 (W.D. Pa. Nov. 15, 2013).

However, a close reading of the case law cited underscores how Plaintiff's amended complaint lacks sufficiency. As described in these cases, the plaintiffs there provided the court with adequate factual information, including amount of actual wages earned, copies of the Time Card Sheets, allegations of at least four instances of alleged unpaid compensation, *Asirifi*, 2013 U.S. Dist. LEXIS 16419, *2, 11-12, and detailed allegations regarding job duties, the nature of the work performed, and specific information regarding what tasks were performed during the overtime hours worked. *Rummel*, 2013 WL 6055082, *5. No similar facts are pled here. Under the circumstances, the FLSA claim of Plaintiff lacks specificity and is dismissed.

As to claims exerted on behalf of the potential class members, Defendant argues that Plaintiff has made no factual showing to permit this Court to infer that the purported class members are similarly situated. Collective actions under the FLSA are governed by 29 U.S.C. § 216(b), which establishes an opt-in scheme whereby "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *See Herring v. Hewitt Assocs.*, 2006 U.S. Dist. LEXIS 56189, *5 (D. N.J. Aug. 11, 2006).

Generally, courts engage in a two-step inquiry to determine whether class members are similarly situated for purposes of § 216(b). *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 62 (E.D.

Pa. Sept. 15, 2009). The first stage is a conditional certification inquiry to determine, through the showing of a "factual nexus" between Plaintiff's situation and that of the class members, whether all plaintiffs are similarly situated. *Id.* This Court, however, need not address the sufficiency of the collective action claims because the class has not yet been certified. Unnamed class members are not technically part of the action until the court has certified the class. However, once the named plaintiff's claim is dismissed, there is no one who has a justiciable claim that can be asserted. *Binson v. J.E. Robert Co.*, 2006 U.S. Dist. LEXIS 101012, 42 (E.D. N.Y. June 27, 2006); *see also Board of Sch. Comm'rs of Indianapolis v. Jacobs*, 420 U.S. 128, 129 (1975) (holding action moot when named plaintiffs challenging school newspaper rules graduated and no class had been properly certified by the district court).

Having determined that the FLSA claim in Count I that pertains to Plaintiff does not survive the motion to dismiss, this Court finds that "there is no [longer any] plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a 'case or controversy' within the meaning of Article III of the Constitution." *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974-75 (3d Cir. 1992) (citing *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1041 (5th Cir. 1981)).[4] Consequently, any claim in Count I asserted on behalf of the collective class is also dismissed.

### *Pennsylvania Whistleblower Law Claims*

The Whistleblower Law makes it unlawful for an employer to:

[D]ischarge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, locations or privileges

---

[4] This Court also concludes that Plaintiff's amended complaint fails to show the requisite "factual nexus" between her own situation and that of other current and former employees to survive Defendant's motion to dismiss. *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 63 (E.D. Pa. Sept. 15, 2009) (citations omitted). Like in Plaintiff's assertion, the scant allegations pled on behalf of those similarly situated do not rise to the level of specificity from which the plausibility of the collective class claims can be ascertained.

of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 P.S. § 1423(a).

An "employer" is defined as a "person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a *public body*." *Id.* § 1422. An "employee" is defined as a "person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for a *public body*." *Id.* A "public body" includes "[a]ny other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body." *Id.* (emphases added).

In addressing Plaintiff's whistleblower claim, the threshold issue here is whether Defendant NHS-Allegheny is a "public body" by virtue of its alleged receipt of money from and/or through federal, state, and/or county assistance programs. The Pennsylvania Supreme Court has neither directly addressed this issue nor interpreted the phrase "funded [...] by or through." Therefore, although not dispositive, decisions of state intermediate appellate courts should be accorded significant weight in the absence of an indication that the highest state court would rule otherwise. *Tanay v. Encore Healthcare*, 810 F. Supp. 2d 734, 742 (citing *City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 123 (3d Cir. 1993)); *Pacific Employers Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 433 (3d Cir. 2012) (internal quotations omitted).

Different courts have interpreted the term "funded [...] by or through" and have arrived at conflicting conclusions as to what is a "public body". For example, in *Cohen v. Salick Health Care, Inc.*, 772 F. Supp. 1521 (E.D. Pa. 1991), a case where plaintiff alleged that she was terminated in retaliation for protesting against and threatening to report wrongdoing on the part

of defendant to Temple University, with whom defendant contracted to operate and manage a Comprehensive Cancer Center in North Philadelphia, the court provided a background review of the Medicaid program; that it was administered through the Commonwealth's Medical Assistance Program by the Department of Public Welfare; and that payments for services are made directly by the State to the individuals or entities that furnish the services. *Cohen*, 772 F. Supp. at 1526. The *Cohen* court emphasized, however, that doctors, nursing homes, and other health care providers are not the intended beneficiaries of the Medicaid program. *Id.* (citing *Koerpel v. Heckler*, 797 F.2d 858, 864 (10th Cir. 1986); *Geriatrics, Inc. v. Harris*, 640 F.2d 262, 265 (10th Cir. 1981)). "Instead, the purpose underlying the [Medicaid] funding program is to extend financial benefits to the patients eligible to receive their medical care at government expense." *Geriatrics*, 640 F.2d at 265 (citing 42 U.S.C. § 1395a). As such, through Medicaid, health care providers merely receive payment for services rendered to Medicaid eligible patients. *Cohen*, 772 F. Supp. at 1526-27. The court further noted:

> Although there is no question that many doctors and other health care providers receive "funds" for services rendered to Medicaid eligible patients, it was clearly not the intention of the Pennsylvania legislature to include them as funded public bodies under the Whistleblower Law.
>
> It is abundantly clear that the legislature did not intend that the mere receipt of monies from a state source for services rendered should bring the recipient within the Whistleblower Law.
>
> *Id.*, 772 F. Supp. at 1527.

The *Cohen* Court predicted that the Pennsylvania Supreme Court would not interpret the legislature's use of words "funded by or through" to mean or imply that the receipt of any Medicaid reimbursements is sufficient to bring the recipient within the definition of a "public body" for purposes of the Whistleblower Law. *Id.* at 1526.

9